552 P.2d 1220

Don W. GILBERT et al., Plaintiffs-
Appellants,

v.

Merlin SMITH and Earlene Smith, husband
and wife, and all other persons claiming
an adverse interest to the water rights of
Beaver Dam Creek, Densmore Creek and
Birch Creek, tributaries of the Bear River,
Defendants-Respondents.

No. 11949.

Supreme Court of Idaho.

Aug. 5, 1976.

Gus Carr Anderson, Pocatello, for plaintiffs-appellants.

L. Lamont Jones, Pocatello, for defendants-respondents.

SHEPARD, Justice.

This is an appeal from a declaratory judgment involving the water rights on three streams within Township 11 South, Ranges 39 and 40 E.B.M. in Caribou County, Idaho. Involved are the waters of Birch Creek and Densmore Creek which, according to the testimony on behalf of all parties, are tributaries of and flow into Beaver Dam Creek which in turn is a tributary of Bear River.[1] All parties to this action are owners or contract lessees of water rights in these interrelated waterways.

The rights to use of all waters from the three named streams were, among others, judicially determined in the case of *Utah Power & Light Co. v. Last Chance Canal Co.* (unreported, U. S. Dist. Court, E.D. Idaho) and set forth in the decree of the federal district judge, July 14, 1920 (hereinafter the Dietrich Decree). In that decree, William and Dora Larkin were awarded a priority right to specific measurements of water from each of the three creeks dated May 1, 1882, and George and Mary Smith received a priority right from Densmore and Birch Creeks with a priority date of 1900. The appellants in this action are the successors in interest to the Smiths' water rights and the respondents are successors to the Larkins' water rights. Appellants thereby possess adjudicated water rights which are junior to the respon-

---

1. Such is in conflict with the finding of fact of the trial court which we deem to be erroneous but such in no way affects or alters the result in this case.

dent on Densmore and Birch Creeks and appellants possess no adjudicated rights on Beaver Dam Creek.

Respondents are downstream users and divert their water from Beaver Dam Creek, some one-half mile below its confluence with Densmore and Birch Creeks. Those same circumstances existed at the time of the 1920 Dietrich Decree. Between the point of confluence of the three creeks and the point of respondents' diversion, are a number of beaver dams and *sump holes or sinks.* Historically, those obstacles have caused losses of water and difficulty in obtaining water to satisfy the water rights of the respondents and their predecessors.

Between 1970 and 1973, appellant Gilbert gained possession of his property, increased the previous diversion for that property from Densmore and Birch Creeks and thereby increased the irrigated acreage of his land by some 60–80 acres. In 1973, the respondents desired to increase the water flow to their lands and completed a construction of a pipeline circumventing and avoiding the sump holes and beaver dams.

There is no claim herein to the water of Beaver Dam Creek. Rather, the substance of appellants' claim is that since the time of the 1920 decree the appellants and their predecessors have diverted water from Densmore and Birch Creeks in excess of their decreed rights, have applied the same to beneficial use and are therefore entitled to such waters on the alternative grounds of abandonment and adverse possession. Following a court trial, appellants' claim was rejected and the court entered the following pertinent findings:

"9. That none of the parties offered any proof as to the measurement of the waters used by each of them respectively in any of the years in dispute.

10. That plaintiffs failed to prove use of the waters of Densmore Creek and Birch Creek in excess of their decreed right and plaintiffs failed to prove use of any of the waters of Beaver Dam Creek.

11. That plaintiffs failed to prove continuing, uninterrupted, open or adverse appropriation or use of any of the defendants' decreed waters of densmore (sic) and Birch Creek.

12. That any use of plaintiffs of the decreed waters of defendants or their predecessors in Densmore Creek and Birch Creek was with the permission and consent of defendants or their predecessors in interest."

The court concluded that all rights as established by the Dietrich Decree should be reaffirmed and enjoined all the parties from interfering with those established rights. This appeal was brought on the basis that the judgment is not supported by the evidence.

The essential issues of this appeal have been argued to this Court in the context of the distinct doctrines of abandonment and adverse possession. While we think these issues do in fact arise in this dispute, we are also of the opinion in reviewing the arguments of the parties in light of the applicable law that an additional legal concept is presented by this appeal which necessitates independent consideration. Some confusion has resulted in this case due to misunderstandings of the exact elements of abandonment as they have been, and are intended to be, applied to water rights disputes. This confusion is largely understandable given the state of the case law in this jurisdiction. Although framed in the language of abandonment, appellants' principle argument in this appeal concerns not only the doctrine of abandonment but likewise the question of statutory forfeiture. This doctrine, although similar to abandonment, involves characteristics of significant difference which must be borne in mind in resolving this and similar disputes addressing the relinquishment of decreed water rights.

Abandonment is a common law concept involving the concurrence of an intention to abandon and the actual relinquishment or surrender of the water right. 93 C.J.S. Waters § 193, at 994; Wiel, 1 Water Rights in the Western States, § 567 (1911). It is not dependent necessarily upon length of time but upon the essential element of intent. *Carrington v. Crandall*, 65 Idaho 525, 147 P.2d 1009 (1944); *Union Grain & Elevator Co. v. McCammon Ditch Co.*, 41 Idaho 216, 240 P. 443 (1925); *St. John Irr. Co. v. Danforth*, 50 Idaho 513, 298 P. 365 (1931); *Chill v. Jarvis*, 50 Idaho 531, 298 P. 373 (1931); *Smith Land Co. v. Furhiman*, D.C.Idaho, 36 F.Supp. 667 (1941). Such intent may be evidenced by non-use for a substantial period of time but mere non-use is not per se abandonment. Wiel, *supra*, § 569. In contrast, the doctrine of forfeiture is predicated upon a statutory declaration that all rights to use water may be lost where an appropriator fails to make beneficial use of the water for a statutory period regardless of the intent of the appropriator. 93 C.J.S. Waters § 193; Wiel, *supra*, § 574; *East Side Canal & Irr. Co. v. U. S.*, 76 F.Supp. 836, 839, 111 Ct.Cl. 124 (1948); *Hammond v. Johnson*, 94 Utah 20, 66 P.2d 894, 899 (1937). In Idaho this concept is set forth in I.C. § 42–222(2). The effect of that provision is that an appropriator who fails to apply his water right to a beneficial use for a continuous five year period is regarded as having lost all rights to the use of such water.[2] Although the terms abandonment and forfeiture have often been used by this Court interchangeably *see*, *Hodges v. Trail Creek Irrigation Co.*, 78 Idaho 10, 297 P.2d 524 (1956); *In re Boyer*, 73 Idaho 152, 248 P.2d 540 (1952);

*Wagoner v. Jeffery*, 66 Idaho 455, 162 P. 2d 400 (1945); *Graham v. Leek*, 65 Idaho 279, 144 P.2d 475 (1943); *Zezi v. Lightfoot*, 57 Idaho 707, 68 P.2d 50 (1937), the case of *Carrington v. Crandall*, *supra*, 65 Idaho at 532, 147 P.2d 1009, makes it clear that they are distinct legal concepts and should be considered as such. We recognize that this Court has in the past failed to indicate this difference in addressing cases involving water rights disputes. Nevertheless, we deem it essential for this and other future cases of a similar nature to keep the concepts of abandonment and statutory forfeiture, and their application, distinct.

It is established that a water right in Idaho, although affirmed by a court decree, may be abandoned and subject to subsequent appropriation. I.C. § 42–222(2); *Graham v. Leek, supra*, 65 Idaho at 287, 144 P.2d 475; *Chill v. Jarvis, supra*; *Albrethsen v. Wood River Land Co.*, 40 Idaho 49, 59, 231 P. 418 (1924). One who seeks to alter decreed water priorities has the burden to demonstrate the elements of abandonment by clear and convincing evidence. *Carrington v. Crandall, supra*, 65 Idaho at 531, 147 P.2d 1009.

It is appellants' position that for the period of 53 years, from the time of the Dietrich Decree until the bypass pipeline was installed, the respondents and their predecessors were unable to utilize the waters of Densmore and Birch Creeks. They assert that those waters would have been wasted had not the appellants and their predecessors diverted the water and applied it to beneficial use. It is thereby argued that because of their inability to utilize the water respondents effectively abandoned their

---

2. There are, however, recognized exceptions to this rule. See, e. g., I.C. § 42–222(2) where upon showing a good and sufficient reason for non-use the five year period may be extended; *Hodges v. Trail Creek Irrigation Co.*, 78 Idaho 10, 297 P.2d 524 (1956); *Almo Water Co. v. Darrington*, 95 Idaho 16, 501 P.2d 700 (1972), where cessation is involuntary or due to the unlawful acts of others; *Zezi v. Lightfoot*, 57 Idaho 707, 68 P.2d 50 (1937); *Carrington v. Crandall*, 65 Idaho 525, 147 P.2d 1009 (1944) where there is resumption of use prior to subsequent appropriation; *U. S. ex rel. Ray v. Hibner*, 27 F.2d 909 (E.D.Idaho) where Indian reserved rights are involved.

rights and caused them to revert to the state. The implication is that respondents' failure to remedy the cause of the wasting is evidence of an intent to relinquish any right in the water. Cf. *Cantlin v. Carter,* 88 Idaho 179, 187, 397 P.2d 761 (1964). Consequently, it is submitted that the diversion and use of the *entire* flow of Densmore and Birch Creeks by appellants and their predecessors constituted a new, lawful and superior appropriation of the rights.

As a rule, the law of water rights in this state embodies a policy against the waste of irrigation water. *Ward v. Kidd,* 87 Idaho 216, 392 P.2d 183 (1964). Such policy is not to be construed, however, so as to permit an upstream junior appropriator to interfere with the water right of a downstream senior appropriator so long as the water flowing in its natural channels would reach the point of downstream diversion. *Martiny v. Wells,* 91 Idaho 215, 219, 419 P.2d 470 (1966). We agree that if due to seepage, evaporation, channel absorption or other conditions beyond the control of the appropriators the water in the stream will not reach the point of the prior appropriator in sufficient quantity for him to apply it to beneficial use, then a junior appropriator whose diversion point is higher on the stream may divert the water. *Albion-Idaho Land Co. v. NAF Irr. Co.,* 10 Cir., 97 F.2d 439, 444 (1938); *Neil v. Hyde,* 32 Idaho 576, 586, 186 P. 710 (1920); *Jackson v. Cowan,* 33 Idaho 525, 528, 196 P. 216 (1921). *See also, Washington v. Oregon,* 297 U.S. 517, 522–523, 56 S.Ct. 540, 80 L. Ed. 837 (1936). Nevertheless, it was appellants' burden here to show that neither the surface or underflow of Densmore or Birch Creeks, if uninterrupted, would reach the point of diversion of the respondents, as senior appropriators. *Jackson v. Cowan, supra,* 33 Idaho at 528, 196 P. 216; *Neil v. Hyde, supra.* This the district court found the appellants had failed to do and we hold that the evidence sustains such a finding.

Although the trial court concluded that the entire flow of the waters was not abandoned, it is also asserted that at least *partial* abandonment occurred. In this regard the testimony was highly conflicting and at most could be read as suggesting that respondents and their predecessors were often unable to fully and continuously make beneficial use of their rights and that the appellants and their predecessors occasionally interfered with respondents' rights for substantial periods of time without apparent objection. Nevertheless, mere non-use coupled with interference with senior rights does not establish a case of abandonment. The intention to abandon must be evidenced by clear, unequivocal and decisive acts, and use of another's water under circumstances which may be characterized as permissive is not a relinquishment of any right. *Wagoner v. Jeffery,* 66 Idaho 455, 162 P.2d 400 (1945); *Perry v. Reynolds,* 63 Idaho 457, 122 P.2d 508 (1942); *Reynolds Irr. Dist. v. Sproat,* 70 Idaho 217, 214 P.2d 880 (1950). The record in this case does not disclose any such intent with the certainty and clarity required by these decisions.

A detailed review of the evidence on behalf of both parties is not necessary except to note that the evidence is in substantial conflict. Various witnesses testified as to significantly different descriptions of the flow, diversion and the use of the waters of Densmore and Birch Creeks by various persons from 1910 to 1973. There was additional testimony as to conflicts which arose between upstream and downstream appropriators between the years 1920 and 1973, including disputes which at times invoked the intervention of a watermaster and at other times resulted in neighborly resolution. In all of these matters of factual controversy credibility of the witnesses and the weight to be given their testimony was exclusively within the province of the trier of fact. *Thomson v. Marks,* 86 Idaho 166, 384 P.2d 69 (1963). The trial court on the basis of such conflict in testimony held that the appellants had

failed to meet their burden. Such holding is supported by substantial, competent although conflicting evidence and therefore will not be disturbed on appeal. *Isaguirre v. Echevarria,* 96 Idaho 641, 645, 534 P.2d 471 (1975); I.C. § 13–219.

With respect to statutory forfeiture, I.C. § 42–222(2) mandates a five year period during which respondents or their predecessors must have failed to apply their water right to the beneficial use for which it was appropriated. While there is evidence of continuous non-use in this case, the record does not identify any measurable five year period of non-use which would have supported the trial court in making the requisite finding to establish a statutory forfeiture. Forfeiture of water rights is not favored and all intendments are indulged in against a forfeiture. *Hodges v. Trail Creek Irr. Co., supra; Graham v. Leek, supra.* Upon this record we hold that the trial court was correct in finding that no forfeiture occurred.

We turn next to the question of adverse possession. Prescriptive title to water, which is real property, may be acquired by adverse use for five, years. *Pfleuger v. Hopple,* 66 Idaho 152, 156 P.2d 316 (1945); *Mountain Home Irr. Dist. v. Duffy,* 79 Idaho 435, 440, 319 P.2d 965 (1957). Such use must be open, hostile, exclusive, continuous and under claim of right. *See Carrington v. Crandall, supra; Pfleuger v. Hopple, supra; McGlochlin v. Coffin,* 61 Idaho 440, 103 P.2d 703 (1940); *Head v. Merrick,* 69 Idaho 106, 203 P.2d 608 (1949); *Village of Fairview v. Franklin Maple Creek Pioneer Irr. Co.,* 59 Idaho 7, 79 P.2d 531 (1938); *Frost v. Penfold,* 44 Idaho 651, 258 P. 534 (1927). Those elements of prescription must be shown by clear and convincing evidence and the burden to do so was on the claimant. *Loosli v. Heseman,* 66 Idaho 469, 162 P.2d 393 (1945).

We hold that appellants failed to show any right in themselves to any of the water of Densmore and Birch Creeks by virtue of adverse possession. Appellants had the burden of establishing that their use was in excess of the decreed rights, that such use deprived the prior appropriators of their water at times when such water was actually needed and that such adverse use was continuous for the statutory period of time. Facts indicating merely that the claimant used water and claimed the right to use it is insufficient proof of adverse use. *Village of Fairview v. Franklin Maple Creek Pioneer Irr. Co., supra.* The evidence may be deemed to establish that at times appellants and their predecessors interfered with the rights of the senior appropriators but such evidence also indicates that such use was intermittent, interrupted, irregular and not wholly under an assertion of right. We hold such use by appellants to be only a "scrabbling possession" of the kind discussed by this Court in *Carrington v. Crandall, supra,* 65 Idaho at 532, 147 P.2d 1009, and thus insufficient to establish their claim of adverse possession.

Appellants assert that the trial court erred in its finding that appellants' use of the waters was with the permission of the rightful owner. We may agree with appellants' assertion that there was insufficient evidence to sustain a finding that the use of the waters by the appellants and their predecessors was with the permission of the rightful owner. Nevertheless, as indicated by the aforesaid discussion, we find that the order of the trial court was correct, albeit based on partially erroneous grounds. Therefore it will be upheld by this Court. *Lemmon v. Hardy,* 95 Idaho 778, 519 P.2d 1168 (1974); *Johnson v. Gorton,* 94 Idaho 595, 495 P.2d 1 (1972); *Church v. Roemer,* 94 Idaho 782, 498 P.2d 1255 (1972).

Appellants also argue that the trial court erred in failing to find that the respondents have expanded their diversion in irrigated acreage in excess of that allowed by

the 1920 Dietrich Decree. It is true that there is conflicting evidence on the question of whether the respondent may have increased his water supply and increased his acreage by means of the installation of the pipes circumventing the sinks and sump holes. Nevertheless, any such asserted error and problem is adequately resolved and settled by the judgment of the district court which reaffirms the Dietrich Decree and enjoins *both* parties from interference with the rights set forth in said decree. We have reviewed appellants' remaining assignments of error and find them to be without merit. Judgment of the lower court is affirmed. Costs to respondents.

McFADDEN, C. J., DONALDSON and BAKES, JJ., and SCOGGIN, D. J. (Ret.), concur.