(Nos. 5612, 5613. May 16, 1931.)

In the Matter of the Applications of L. A. RICE and HENRY W. BARTLETT et al. to Change the Point of Diversion of Certain Water Rights from the Head of the Boise City Canal Company's Canal to the Head of the Farmers' Union Ditch Company's Canal.

[299 Pac. 664.]

J. L. Niday, for Appellant.

Edwin Snow, for Respondents.

BUDGE, J.—On January 18, 1906, the district court of Canyon county decreed to appellant, Boise City Canal Company, a water right of 1903 miner's inches of the waters of Boise River with priority of June 1, 1866. (*Farmers' etc. Co. v. Riverside Irr. Dist.*, 16 Ida. 525, 102 Pac. 481.) By the terms of the decree this water right was awarded for use on agricultural lands lying under the canal system of appellant company, there being in the decree no precise description of these lands by legal subdivision.

Appellant describes itself as a mutual, co-operative water corporation, formed to acquire and hold water appropriation rights and to distribute waters to its stockholders, and having outstanding 2,400 shares of stock. It appears that Rice, one of the respondents, is the owner of 25 shares of capital stock of appellant company and that Henry W. Bartlett, Horace Bartlett and Dr. Fred A. Pittenger are the owners of 75 shares of capital stock of said corporation. During the early part of the year 1919 and for some years prior thereto the water represented by these stock certificates had been diverted at the intake of the canal of appellant company on the Boise River, whence it was transported down the canal of said company for some distance, then through a conduit leading to the Farmers Union Ditch Company canal. From this point it was carried down the Farmers Union canal for some distance and delivered for use upon the land of respondents. In the year 1919 great difficulty was encountered in making delivery of the water by this method. During a part of the season of 1919 and each season up to and including 1925, upon written instructions or authorization given to the Boise River general watermaster by appellant, the water represented by the stock certificates held by respondents was, instead of being diverted from the river at the head of appellant's canal, diverted directly into the Farmers Union canal and thence delivered to the lands of respondents or their predecessors

in interest. During the fall of 1925 the Boise River watermaster notified appellant that these temporary annual. transfers would no longer be permitted, requiring instead that if the transfer was to be continued a permanent order of transfer must be secured. In view of this situation, and on December 26, 1925, respondents filed applications with the commissioner of reclamation, under C. S., sec. 5582, as amended, Sess. Laws 1921, chap. 146, p. 334, to transfer the point of diversion of the water represented by their respective parcels of stock to the intake of the Farmers Union canal. The only party appearing in opposition to these applications was appellant, which based its protest upon certain formal grounds and upon the ground that the requested transfers would work an injury to it in impairing its means of collecting assessments upon the stock representing such transferred water rights.

The applications were granted by the department of reclamation, conditioned upon there being filed and recorded with the recorder of Ada county a covenant subjecting the stock, the water rights represented thereby, the land upon which the water is used, and the applicants personally, to liability for all assessments levied by the corporation on this stock, to the same extent as if the change in the point of diversion of the water had not been made. The covenants of liability aforesaid were made covenants running with the land upon which the water was desired to be used. These covenants were filed and recorded, whereupon the certificates of transfer were issued by the department of reclamation. Appellant company prosecuted appeals to the district court of Ada county, where the cases were consolidated for hearing, as they have been in this court. In each case the court affirmed the action of the department of reclamation in allowing the transfers. The causes are here on appeal from orders of the trial court denying appellant's motions for new trial in each of the two cases.

It is first contended that Boise River is not an adjudicated stream, therefore the department of reclamation was without authority under the provisions of C. S., sec.

5582, as amended, *supra,* to entertain the applications for change of point of diversion. This contention cannot be sustained since, in the case of *Farmers' etc. Co. v. Riverside Irr. Dist.,* 16 Ida. 525, 102 Pac. 481, the waters of the Boise River were adjudicated, save and except as to the duty of water, and ever since January 29, 1916, this stream has constituted Water District No. 12-A, and the waters thereof have been distributed by regularly elected water-masters. While it is true that the duty of water was not determined in the case cited, the duty of water was subsequently fixed by the district court under the decree of priorities in that case, and, as was said in *Owen v. Nampa & Meridian Irr. Dist.,* 48 Ida. 680, 285 Pac. 464:

"We are of the opinion the decision of this court in the case of *Farmers' etc. Ditch Co. v. Riverside Irr. Dist.,* 16 Ida. 525, 102 Pac. 481, together with the decree of the trial court in that case and the orders of Judge Bryan, while not a final adjudication in the sense of becoming *res adjudicata,* constitute an adjudication of the waters of Boise River within the meaning of sec. 5608, C. S., for the purpose of distribution."

It is further contended that respondents were not at the time of their applications for transfer the owners of any land subject to irrigation under appellant's system, and that the right to the use of water upon lands on which such water had theretofore been used had not been abandoned, therefore respondents' applications for transfer did not come within the provisions of sec. 5582, *supra.* We are not inclined to a technical construction of this section. It is a remedial statute and should therefore be liberally construed, when applied to the facts in the instant case. What particular land the waters in question had theretofore been applied to under appellant's system cannot be determined from the court's decree in *Farmers' etc. Co. v. Riverside Irr. Dist., supra.* It is clear from the proof in this case that the use of the waters had been abandoned on the particular lands lying under appellant's canal long prior to the applications for change of point of diversion by respondents,

and that such transfers of the point of diversion of the waters represented by the stock of respondents had been authorized by the president and secretary of appellant company and was with the knowledge of its directors, and such waters had been actually diverted at the intake of the Farmers Union canal and from that point delivered and applied to a beneficial· use upon respondents' lands.

Upon · the appeal to the district court from the action of the department of reclamation the court acquired full equitable jurisdiction over the entire controversy. In *State v. Adair,* 49 Ida. 271, 287 Pac. 950, it was held that an appeal to the district court from a decision of the commissioner of reclamation, while called an appeal, is an original proceeding commenced in the district court and there heard *de novo,* under the provisions of C. S., sec. 5582, as amended by Sess. Laws 1921, chap. 146, p. 334.

It was immaterial whether respondents were the owners of the land lying under appellant's canal. In *First Security Bank v. State,* 49 Ida. 740, 291 Pac. 1064, the right of the commissioner of reclamation and the district court to entertain a petition for permission to change the place of use of water was challenged on the ground that the petitioner was not the owner of the land and C. S., sec. 5582, *supra,* provides that any person *owning* land to which water has been made appurtenant shall first make application to the department of reclamation for transfer of the point of diversion and place of use. It was held this position was untenable, it being well settled that a water right is a property right and that one of its valuable incidents of which the owner cannot be deprived is the right to use it where he will and to change its place of use provided always that by such use or such change in the place of use the rights of others are not adversely affected.

In *Hard v. Boise City Irr. Co.,* 9 Ida. 589, 76 Pac. 331, 65 L. R. A. 407, it was held that even a renter of water from a canal company has the right to change the place of use of rented water. The court said:

"If the theory of respondent (canal company) should prevail in this case, valuable water rights might be lost, for the simple reason that the state permitted this company to take a large body of water from the Boise river for the proposed reason of furnishing settlers, and others who might want to use it, instead of leaving it in the natural channel."

This court also said, in *Twin Falls Canal Co. v. Shippen*, 46 Ida. 787, 271 Pac. 578:

"A water right is real property and may be sold and transferred separately from the land upon which it has been used, the same as any other real property. (C. S., sec. 5325; *Crockett v. Jones*, 42 Ida. 652, 249 Pac. 483; *Hard v. Boise City Irr. Co.*, 9 Ida. 587, 76 Pac. 331, 65 L. R. A. 407.) The right to change is a pre-existing right, and always can be enforced so long as the rights of others are not thereby injuriously affected, and belongs to the stockholder (consumer) in a mutual ditch company as fully as to any other appropriator. (*Wadsworth Ditch Co. v. Brown*, 39 Colo. 57, 88 Pac. 1060.) . . . . Whether there has been an abandonment of the priority of any portion of the decreed right is a matter to be settled in some other appropriate proceeding."

Coming now to the question of injury to appellant by reason of the transfer of the point of diversion: Where it is apparent that no injury is sustained, or that it may be obviated, the right should not be denied. The waters of the state should be put to the greatest beneficial use. That policy has been recognized both by the legislature and the courts of this jurisdiction. These respondents are the owners of 25 and 75 shares, respectively, of the capital stock of appellant company. The stock represents an interest in the waters of the Boise River decreed to said company. The water is subject to sale and transfer, as real estate. The right to its use cannot be denied, and it may be used upon land to which it was first made appurtenant or upon other lands to which it might become appurtenant.

██ The decrees in these cases provide that, notwithstanding the transfer of the place of use and point of diversion of the water, the shares of stock representing the water rights shall be and continue liable for all lawful assessments levied by appellant company to the same extent as were such shares prior to the transfer of place of use and point of diversion. And to secure the payment of any lawful assessment, appellant is decreed a lien upon the stock and land upon which the water is to be used. In so providing against possible injury to appellant, which we think it was the unquestionable power of the court to do, there remains no cause for complaint in the anticipation of possible delinquencies in payment of assessments and charges. (Kinney on Irrigation, p. 1538; *Hallett v. Carpenter*, 37 Colo. 30, 86 Pac. 317.)

We find nothing to justify reversal of the decrees of the district court or its orders overruling appellant's motions for new trial. The same are therefore affirmed; costs to respondents.

Givens, Varian and McNaughton, JJ., and Babcock, District Judge, concur.